UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTONIO OCHOA BANEGA

    Petitioner,

v.                                Case No. 2:25-cv-1152-JES-DNF

WARDEN OF SOFT SIDE SOUTH FACILITY, GARRETT RIPA, PAMELA BONDI, and KRISTI NOEM,

    Respondents.
_____/

## OPINION AND ORDER

This matter is before the Court on Petitioner Antonio Ochoa Banega's amended 28 U.S.C. § 2241 petition for writ of habeas corpus. (Doc. 9). For the reasons set forth below, the petition is granted.

### I. Background

Petitioner is a native and citizen of Cuba. (Doc. 9 at 2). In 1980, he was permitted to enter and temporarily remain in the United States as part of the Mariel Boatlift. (Id.) His parole was revoked on April 1, 1992 after a string of criminal offenses in 1990 and 1991. (Doc. 20 at 1; Doc. 20-1).[1] Petitioner was ordered deported from the United States on April 23, 1992. (Id.

---

[1] Petitioner has a criminal record spanning at least eight years. (Doc. 20-1 at 2-3). However, he claims that he has maintained a clean criminal record since 2003. (Doc. 9 at 9).

at 2). Following his removal proceedings, he was released under an order of supervision (OSUP). (Doc. 9 at 9).

On October 28, 2025, Petitioner appeared for his scheduled reporting in compliance with his OSUP. (Doc. 1 at 2). He was taken into custody without explanation and is currently detained at the Florida Soft Side South Facility in Ochopee, Florida (Alligator Alcatraz). (Id. at 7.) On November 1, 2025, Petitioner received a Notice of Revocation of Release stating that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case." (Doc. 20-2 at 1). Petitioner was advised that he would "promptly be afforded an informal interview" at which time he would be given the opportunity to respond to the reasons for the revocation and to provide evidence demonstrating that removal was unlikely, and if not released following the informal interview, he would receive notification of a formal review that would occur within three months. (Id.)

Petitioner now asserts that he did not receive any review—formal or informal—and seeks either immediate release from custody and an order that Respondents do not re-arrest or detain him absent full and strict compliance with federal law or alternatively, notice and a hearing where he can confront and oppose removal to any alternative third country that agrees to accept him if one is identified. (Doc. 9 at 44).

## II. Discussion

### A. The Court has subject matter jurisdiction to review Petitioner's claim.

Respondents first argue that 8 U.S.C. § 1252(g) precludes review of Petitioner's claim because he is detained for the purpose of executing his final order of removal. (Doc. 20 at 3). Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). As the Supreme Court has explained, § 1252(g) is a "discretion-protecting provision" designed to prevent the "deconstruction, fragmentation, and hence prolongation of removal proceedings." Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999) ("AAADC").

But the Supreme Court interprets § 1252(g) narrowly, emphasizing that it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." AAADC, 525 U.S. at 482, 487. Rather, "§ 1252(g) lists just three discrete actions: actions to commence proceedings, adjudicate cases, or execute removal orders." Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting AAADC, 525 U.S. at 482 (quotation marks

omitted)). And "only claims that arise from one of the covered actions are excluded from [a court's] review[.]" Id.

The Supreme Court also narrowly interprets § 1252(g)'s "arise from" language, cautioning that the statute "refer[s] to just those three specific actions themselves." Jennings v. Rodriguez, 583 U.S. 281, 294 (2018). To determine whether a claim "arise[s] from" one of the covered actions, "courts must focus on the action being challenged," Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1258 (11th Cir. 2020), namely, whether one of the three actions forms the "basis of the claim," Gupta v. McGahey, 709 F.3d 1062, 1065 (11th Cir. 2013).

Here, Petitioner maintains that he "is not challenging the validity of the final order of removal, but rather the legality of detention in violation of federal regulations and the due process under the Fifth Amendment." Id. at 6. The basis of the claim is that Petitioner was detained at an ICE check-in "without prior notice, without identifying any parole or supervision violation, and without providing an opportunity to contest the revocation[.]" (Id. at 30). He argues that "[t]he regulations governing the custody and review of Mariel Cubans, 8 C.F.R. § 212.12, and the general OSUP revocation procedures, 8 C.F.R. §§241.4(l), 241.13, create enforceable rules that Respondents must follow before re-initiating detention, or attempting removal. Respondents have ignored these rules entirely." (Id. at 31).

4

The Court agrees that the petition does not appear to challenge any decision or action to detain Petitioner in furtherance of the execution of his removal—only the process afforded Petitioner pursuant to that detention. As such, § 1252(g) does not bar review of this case to the extent Petitioner seeks only "substantive review of the underlying legal bases" for his detention. Madu v. U.S. Atty. Gen., 470 F.3d 1362, 1368 (11th Cir. 2006) (citations omitted). See also Kong v. United States, 62 F.4th 608, 617 (1st Cir. 2023) (finding that § 1252(g) does not bar "judicial consideration of collateral challenges to the legality of a petitioner's detention"); Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999) (finding that § 1252(g) did not bar review of a claim related to detention where the petitioner "did not ask the district court to block a decision 'to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter' ").

    **B.   ICE failed to provide Petitioner with an informal interview in violation of 8 C.F.R. § 241.4(l) and the Due Process Clause.[2]**

Shortly after being detained at his ICE check in, Petitioner received a Notice of Revocation that explained his rights:

> Based on the above and pursuant to 8 C.F.R. § 241.4/8 C.F.R. § 241.13, you are to remain in

---

[2] 8 C.F.R. § 241.4(l) governs revocation of supervised release. Under § 241.4(l)(1), a noncitizen who has his order of supervision revoked will be notified of the reasons for revocation, afforded an initial informal interview promptly after return to

5

> ICE custody at this time. You will promptly be afforded an informal interview at which you will be given the opportunity to respond to the reasons for the revocation and to provide evidence to demonstrate that your removal is unlikely. If you are not released following the informal interview, you will receive notification of a new review, which will occur within approximately three months from the date of this notice.

(Doc. 20-2 at 1). Petitioner alleges, among other things, that he did not receive "a prompt informal interview regarding ICE's decision to revoke [his] OSUP and redetain [him], either when [he was] being re-detained or soon thereafter. Nor was [he] given the opportunity at any point to submit any evidence or information showing that there is no significant likelihood of removal in the reasonably foreseeable future, or that he had not violated [his order] of supervision." (Doc. 9 at 26–27).

Respondents argue that, despite the clear statement in the Notice of Revocation indicating that Petitioner would receive informal and (if not released) formal interviews, the government was actually *not* required to provide "an interview or opportunity to respond to the agency's revocation." (Doc. 20 at 8). This,

---

custody, and if not released after the informal interview, provided with a formal review. Section 241.4(l)(2) provides four reasons allowing revocation of release: (1) the purpose of release has been served; (2) the noncitizen violated a condition of release; (3) it is necessary to enforce a removal order or commence removal proceedings; or (4) the noncitizen's conduct or any other circumstance indicates that release is no longer appropriate. However, § 241.4(l)(2) is silent regarding a detainees' right to informal or formal review.

6

Respondents argue, is because Petitioner was detained under § 241.4(l)(2)—which does not expressly require due process. (Id.) Respondents compare 8 C.F.R. § 241.4(l)(1)("The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification") with 8 C.F.R. § 241.4(l)(2) (no such language). (Id.)

The government does not explain why—given the language in Petitioner's Notice of Revocation regarding his right to due process—it now argues that Petitioner's revocation implicated only § 241.4(l)(2). Nevertheless, it does not change the outcome here. Courts routinely "interpret[] section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation"—meaning that the notice and interview requirements stated in § 241.4(1)(1) also apply to revocation under § 241.4(1)(2). Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (collecting cases); see also Noem v. Abrego Garcia, 145 S. Ct. 1017, 1019 (2025) (Sotomayor, J., agreeing with the Court's disposition and stating in dicta that under 8 C.F.R. § 241.4(l), "in order to revoke conditional release the Government must provide adequate notice and 'promptly' arrange an 'initial informal interview . . . to afford the alien an opportunity to respond to the reasons for the revocation stated in the notification'"); Grigorian v. Bondi, No. 25-CV-22914-RAR,

7

2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide Petitioner with an informal interview promptly after his [241.4(l)(2)] detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates ICE's own regulations and the Fifth Amendment Due Process Clause."); Zhu v. Genalo, 798 F.Supp.3d 400, 410 (S.D.N.Y. Aug. 26, 2025) ("[P]aragraph (l) sets forth a unified set of procedures for the revocation of removal.").³

After carefully reviewing the record and the caselaw interpreting and applying § 241.4(l), the Court is persuaded of two things. First, the clear and unconditional language in Petitioner's Notice of Revocation explaining the process due shows Government awareness that noncitizens whose OSUPs are revoked under any subsection of § 241.4(l) are entitled to the hearing procedures described in that section. If not, it would simply remove the paragraph explaining the detainee's rights. Next, even if the Court accepts Respondents' post hoc argument that Petitioner's revocation was pursuant only to § 241.4(l)(2), the notice and interview requirement of § 241.4(l)(1) also applies to revocation under § 241.4(l)(2). In short, the Government may

---

³ But see Barrios v. Ripa, No. 1:25-CV-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025) (finding that "it does not appear that Petitioner was entitled notice or an informal interview" because Petitioner's OSUP was revoked pursuant to § 241.4(l)(2), not § 241.4(l)(1)).

revoke Petitioner's OSUP for any reason stated in § 241.4(l), but it may not indefinitely detain him without offering him a meaningful opportunity to contest those reasons.

The Southern District of Florida, faced with nearly indistinguishable facts, recently granted relief to the petitioner in a thorough and well-reasoned order, explaining its rationale as follows:

> The process afforded here fails to comply with ICE's own regulations or comport with traditional notions of due process. It is a rather unremarkable proposition that an agency must abide by its own regulations. Of course, not every agency misstep will compel reversal of agency action, much less release of someone in custody. Courts, however, are not so forgiving when the violation implicates basic due process rights.
>
> The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands. The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be...deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty the Due Process Clause protects. In its most elemental formulation, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

Grigorian, 2025 WL 2604573, at *9 (internal citations, alterations, and quotation marks omitted).

9

Here, Petitioner has already been in custody for more than 90 days—past the time for his formal hearing—with no opportunity to be heard or to contest the bases for his re-detention. This failure violates both ICE's own regulations and the Due Process Clause of the Fifth Amendment and compels Petitioner's release. Courts around the country have concluded likewise. See, e.g., Grigorian, 2025 WL 2604573, at *10, Ceesay, 781 F. Supp. 3d at 166; You v. Nielsen, 321 F. Supp. 3d 451, 463 (S.D.N.Y. 2018); Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017); Zhu, 798 F.Supp.3d at 410; M.S.L. v. Bostock, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10-12 (D. Or. Aug. 21, 2025); Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2491782, at *3 (E.D. Tex. July 18, 2025); Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); Wing Nuen Liu v. Carter, Case No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025); M.Q. v. United States, 776 F.Supp.3d 180, 186, 190 n.1 (S.D.N.Y. 2025).

### III. Conclusion

Based on the foregoing, it is hereby **ORDERED and ADJUDGED** as follows:

1. Antonio Ochoa Banega's amended petition for writ of habeas corpus (Doc. 9) is **GRANTED** to the extent set forth in this Order.

2.   Respondents shall release Petitioner from custody within 24 hours of this Order, subject to the conditions of his preexisting Order of Supervised Release.  Respondents shall facilitate Petitioner's transportation from the detention facility by notifying counsel when and where he can be collected.

4.   The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on January 29, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE